United States District Court
Southern District of Texas
**ENTERED**
April 02, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 4:15-CR-80-01 |
| | § | |
| KIRK LAWRENCE BRANNAN | § | |

## ORDER

Defendant's emergency motion for a reduction in sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), is **GRANTED**.

Defendant is re-sentenced to a term of credit for time-served in the Bureau of Prisons, followed by a term of THREE (3) YEARS of supervised release. The Bureau of Prisons is **ORDERED** to release defendant from its custody immediately.

Defendant is **ORDERED** restricted to his residence at all times (home incarceration), except for medical necessities and court appearances or other activities specifically approved by the Court, for a period of TWELVE (12) MONTHS as a condition of supervised release. Defendant will be monitored by the form of location monitoring technology at the discretion of the probation office for that period of TWELVE (12) MONTHS, and he must follow the rules and regulations of the location monitoring program. Defendant must pay the costs of the program. The probation officer will initiate the monitoring program as soon as practicable and when deemed appropriate given the current COVID-19 outbreak. All other conditions of supervised release imposed in the judgment remain in effect.

SIGNED ON April 2, 2020.

Lee H. Rosenthal
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:14-cr-324-02 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| TIMOTHY P. FOSTER | : | |

## MEMORANDUM AND ORDER
### April 3, 2020

Presently Pending before the Court is Defendant Timothy P. Foster's

Supplemental Motion for Compassionate Release and Reduction of Sentence

Under 18 U.S.C. § 3582 (c)(1)(A). (Doc. 187). For the reasons that follow, we

shall grant the Defendant's Motion.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

We have detailed the facts of this matter in prior orders and proceedings, and

thus need not fully repeat ourselves here. (Docs. 164, 165, 183). We instead

recount only those facts relevant to the instant Motion.

For many years, Defendant Timothy P. Foster has suffered from a chronic

lung condition called Bronchiectasis. "Bronchiectasis is a disease of the lungs, in

which mucus builds up in the airways which can cause infection and bleeding. This

build up, and the resulting lengthening of the airways, make it harder and harder to

breathe over time. Bronchiectasis is a progressive disease, and there is no cure."

(Doc. 115 at 31-32).

Mindful of this diagnosis, we sentenced Defendant to 60 months

incarceration, two years supervised release, and restitution of $8,034,183.00 for

making false statements in violation of 18 U.S.C. §1001 on November 16, 2016.

(Doc. 133). That sentence resulted from Defendant's participation in a large-scale

scheme to defraud his employer, Rite Aid Corporation. (Doc. 164 at 19).

Defendant entered FCI Sheridan Satellite Camp by voluntary surrender on January

17, 2017. *Id.* at 30. Defendant was scheduled to be released on April 20, 2021.

(Doc. 183 at 3). However, Defendant was recently approved for home

confinement, which is set to begin on May 18, 2020, approximately 45 days from

the date of this writing. (Doc. 189).

Defendant has previously petitioned both the Bureau of Prisons, ("BOP"),

and this Court for early release. On May 10, 2018, Defendant sent an Application

for Compassionate Release to the Warden of FCI Sheridan seeking early release

due to his chronic lung condition, Bronchiectasis. (Doc. 175). We see no evidence

of a reply from the Warden. In December 2018, the First Step Act modified the

early release process and allowed inmates to bring their cases directly to the

District Court after denial by the BOP. 18 U.S.C.§ 3582(c)(1)(A).

After that change to the law, Defendant renewed his Application to the Warden on August 3, 2019, citing "extraordinary and compelling circumstances" related to his Bronchiectasis as meriting early release. (Doc. 181 at 8). On October 15, 2019, FCI Sheridan Warden Josias denied Defendant's request for compassionate release, finding that Defendant's condition did not substantially diminish Defendant's "ability to function in a correctional facility and conventional treatment [could] provide substantial improvement to his physical health." (*Id*.). The Warden further noted that Defendant's Bronchiectasis was diagnosed and considered at the time of his sentencing. (*Id.* at 10).

On September 26, 2019, Defendant submitted an identical Application to this Court, seeking compassionate release. (Doc. 177). We denied Defendant's Application on November 18, 2019, stating that "we. . .thoroughly considered the severity of Defendant's condition at the time of sentencing in light of the other §3553(a) factors [and] we find that no new 'extraordinary and compelling' reasons exist to merit early release." (Doc. 183 at 13).

Several months after we denied Defendant's application, a novel coronavirus called COVID-19 exploded into the American consciousness. Defendant now renews his Application, arguing that his Bronchiectasis puts him at high risk for serious complications should he contract COVID-19 in the overcrowded and unsanitary prison facility.

As such, Defendant submitted a second *pro se* motion asking the Court for early release from FCI Sheridan so that he may serve the remainder of his sentence under home confinement. (Doc. 185). In response, we directed that an attorney be appointed on Defendant's behalf and ordered that attorney to file appropriate motions. (Doc. 186). On April 1, 2020, Defendant's attorney filed the instant Motion, as well as a brief in support. (Docs. 188, 189). The Government has indicated that they do not concur with Defendant's Motion. However, given the exigent nature of Defendant's plight, we shall consider the Motion without a Government response. The matter is therefore ripe for disposition.

## II.     STANDARD OF REVIEW

The First Step Act authorizes us to reduce an inmate's term of imprisonment under specific circumstances, including for compassionate release. Pub. L. No. 115-391, 132 Stat. 5194. Before the First Step Act was enacted in December 2018, a District Court could grant compassionate release *only* on the motion of the Director of the Bureau of Prisons. *See* Pub. L. No. 115-391, § 603(b); 18 U.S.C.§ 3582(c)(1)(A). Inmates were precluded from making their own motions for compassionate release. The enactment of the First Step Act drastically changed that process, allowing prisoners *themselves* to file motions for compassionate

release, as long as they had first exhausted their administrative remedies with the

BOP.[1]

The standard of review for compassionate release is governed by 18 U.S.C.

§3582(c)(1)(A). That section allows us to modify a term of imprisonment

previously imposed when, "after considering the factors set forth in section

3553(a) to the extent that they are applicable, [we] find that…extraordinary and

compelling reasons warrant such a reduction." 18 U.S.C. §3582(c)(1)(A)(i).

According to the Sentencing Guidelines and available policy statements on

compassionate release, the definition of "extraordinary and compelling reasons"

requires, in relevant part, a federal inmate to show that he is "suffering from a

serious physical or medical condition, a serious functional or cognitive

impairment, or experiencing deteriorating physical or mental health because of the

aging process, and that the impairment is one from which the inmate is not

expected to recover and substantially diminishes the inmate's ability to provide

---

[1]     An inmate may file a motion to modify his term of imprisonment with the District Court
when "the defendant has fully exhausted all administrative rights to appeal a failure of the
Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the
receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18
U.S.C. §3582 (c)(1)(A). The Bureau of Prisons further dictates that, when the warden of a
facility denies an inmate's request, as was the case here, administrative procedures require that
the inmate appeal the denial through the Administrative Remedy Procedure, (28 C.F.R. part 542,
subpart B), to fully exhaust his remedies. We see no evidence on the record that Defendant has
properly appealed his denial through these means. However, the Warden at FCI Sheridan did not
respond to Defendant's application within 30 days of receipt, and so Defendant's Application is
nevertheless properly before this court.

self-care within the environment of a correctional facility." *See* U.S. Sentencing Guidelines Manual (USSG) § 1B1.13; *see also* BOP Program Statement 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*; available at https://www.bop.gov/policy/progstat/5050_050_ EN.pdf.

The Sentencing Guidelines state that we are not necessarily precluded from considering factors that were known at the time of sentencing if those reasons have since become extraordinary and compelling: "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." USSG §1B1.13.

However, the extraordinary and compelling reason must be considered in conjunction with the §3553(a) factors traditionally considered at sentencing, including the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, the nature and circumstances of the offense, and to provide just punishment. 18 U.S.C. §3553(a); 18 U.S.C. §3582(c)(1)(A).

## III.   DISCUSSION

Due to a chronic lung illness, Defendant Timothy Foster already struggles to breathe on a daily basis. (Doc. 177 at 8-9). COVID-19 is perhaps most notorious for causing shortness of breath, and in dire situations, requiring the use of a ventilator to keep patients breathing.[2] As such, the approximately 45 days that stand between Defendant and his exit from an allegedly overcrowded and unsanitary facility could very well be the difference between life and death. Under such circumstances, we find that "extraordinary and compelling" reasons exist in the form of Defendant's "serious physical or medical condition" that warrant his early release. USSG § 1B1.13.

### a.  Extraordinary and Compelling Reasons

We have watched the inexorable progression of COVID-19 around the globe, helpless to stop its incursion across our borders. As a result, we now live in a world largely unrecognizable from that which we occupied a mere few weeks ago. Our everyday lives have, quite literally, ground to a halt. Indeed, the World Health Organization ("WHO") has classified COVID-19 as a global pandemic[3]

---

[2]     *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed April 3, 2020).

[3]     The World Health Organization ("WHO") officially declared COVID-19 a global pandemic on March 11, 2020. *See WHO Director-General's opening remarks at the media*

that has, as of the date of this writing, infected 932,166 people worldwide and

killed more than 46,764.[4] We watch these bleak numbers exponentially increase

every day.

COVID-19 paints a particularly grim picture for individuals, like Defendant,

who have underlying medical conditions. In most individuals, COVID-19 is a mild

illness that causes fever, shortness of breath, fatigue, and cough.[5] However, some

cases can have critical, or even fatal, results.[6] Those of greater age and those with

underlying medical conditions, like the Defendant here, are much more likely to

suffer such severe complications. *Id.*. The Centers for Disease Prevention and

Control ("CDC") particularly warns of the risks of "severe illness" posed to those

with "chronic lung disease."[7]

---

*briefing on COVID-19 - 11 March 2020*, WORLD HEALTH ORGANIZATION, (March 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[4]    *See Coronavirus Disease (COVID-19) Pandemic*, WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last accessed April 3, 2020).

[5]    *Q&A on Coronaviruses (COVID-19)*, WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last accessed April 3, 2020).

[6]    Anne Gulland, Paul Nuki, and Marnie Gill, *Coronavirus: What does COVID-19 do to your Body?*, THE GUARDIAN, https://www.telegraph.co.uk/global-health/science-and-disease/covid-19-do-body-affect-coronavirus/ (Last accessed April 3, 2020).

[7]    *People who are at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed April 3, 2020).

Generally, these risks are thought to be far greater in prison settings. While there have been only roughly 20 reported cases of COVID-19 among inmates and staff of federal prisons, there is a great concern that the virus would spread rapidly amongst the prison population should it take hold.[8] There are general allegations of ineffective quarantine measures in facilities that house inmates exhibiting COVID-19-like symptoms. (*Id*). There are also concerns that federal prison medical facilities would be unable to cope with high levels of the virus within their walls. (*Id.*). Furthermore, there are multiple reports that social distancing is nearly impossible in many facilities, leaving at-risk inmates exposed to high levels of virus transmission. (*Id.*).

The Attorney General has specifically recognized the danger that federal prisons may pose to at-risk inmates like Defendant. He recently issued a Memorandum to the BOP which directed officials to "prioritize" granting home confinement for at-risk inmates who qualify, acknowledging that "for some eligible inmates, home confinement might be more effective in protecting their health" than remaining in prison. (Doc. 189-1 at 1). The BOP has recently determined that the Defendant will be released to home confinement early, on May 18, 2020. (Doc. 189). This is nearly a year earlier than previously scheduled (Doc.

---

[8]     *Federal Prisons Struggle to Combat Growing COVID-19 Fears*, U.S. NEWS AND WORLD REPORT, https://www.usnews.com/news/health-news/articles/2020-03-27/federal-prisons-struggle-to-combat-growing-covid-19-fears (last accessed April 3, 2020).

183 at 3). It is clear, then, that the BOP has considered the individualized factors

outlined by the Attorney General and determined that Defendant's health would be

better protected in home confinement than at FCI Sheridan.[9] We see no reason to

delay that protection.

The circumstances faced by our prison system during this highly contagious,

potentially fatal global pandemic are unprecedented. It is no stretch to call this

environment "extraordinary and compelling," and we well believe that, should we

not reduce Defendant's sentence, Defendant has a high likelihood of contracting

COVID-19 from which he would "not expected to recover." USSG § 1B1.13. No

rationale is more compelling or extraordinary.

### b.  §3553(a) Factors

Having determined that an extraordinary and compelling reason exists to

reduce the Defendant's sentence, we must also consider the §3553(a) factors

traditionally employed at sentencing. §3582(c)(1)(A).

We find that these factors favor immediate release. Defendant is 70 years old

and the instant offense was not a violent one (Doc. 189 at 1; 10). The Defendant's

health and the extreme danger currently posed by the prison system to at-risk

---

[9]      We are further persuaded that Defendant's health is likely better protected in home
confinement by the allegations he raises regarding the unsanitary conditions of FCI Sheridan that
exacerbate Defendant's illness. *See* Doc. 177. We make no determinations here as to the veracity
of these claims, but we note that, if they are true, they, combined with the lack of social
distancing in prison facilities, would produce ghastly results for Defendant.

individuals like the Defendant also favor release. The Defendant has also served more than half of his sentence in a federal facility.

Most tellingly, perhaps, the BOP has determined that under the current circumstances imposed by COVID-19, the Defendant is an at-risk individual meriting home confinement. A mere 45 days stands between the Defendant and the relative safety of his home. But the world has changed drastically in the past 45 days, and the Defendant's remaining incarceration could well cause his demise. We therefore find that the conversion of the remainder of his sentence to home confinement is sufficient but not greater than necessary to serve the purposes of punishment iterated in §3553(a).

## IV.   CONCLUSION

The Defendant has a chronic lung disease that may very well equate a COVID-19 diagnosis with a death sentence. As we stated in our previous COVID-19 opinion, "[i]f we are to remain the civilized society we hold ourselves out to be, it would be heartless and inhumane not to recognize" Defendant's grim predicament. *Thakker v. Doll*, No. 1:20-CV00480 (M.D. Pa. Mar. 31, 2020) (Doc. 47 at 24). We therefore find that the unparalleled present global pandemic tips the scales in favor of Defendant's release and shall grant Defendant's Supplemental Motion for Compassionate Release and Reduction of Sentence Under 18 U.S.C. § 3582 (c)(1)(A). (Doc. 187).

**AND NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Defendant's Supplemental Motion for Compassionate Release and
   Reduction of Sentence Under 18 U.S.C. § 3582 (c)(1)(A), (Doc. 187), is
   **GRANTED**.

2. Federal Correctional Institution Sheridan **SHALL IMMEDIATELY**
   **RELEASE** the Defendant **TODAY** to home confinement.

3. Defendant will **SELF-QUARANTINE** in his home for **FOURTEEN**
   **(14) DAYS** from the date of his release to home confinement.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **No. 3:19-cv-00073(VLB)** |
| | : | |
| **ANTON JEPSEN** | : | |
| **Defendant.** | : | **April 1, 2020** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)

Before the Court is Anton Jepsen's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c). [Dkt. 30]. The Government does not object to the Defendant's motion. [*Id.* at 1]. For reasons stated herein, the Court GRANTS Defendant's motion.

## Background Facts

Mr. Jepsen was arrested in Manhattan in August 2015, following a DEA investigation into a drug trafficking operation that shipped methamphetamine from California to New York. [Dkt. 34 (PSR in *United States v. Jepsen*, NO. 1:15-cr-741-02 (WHP) ¶¶ 11-15]. Judge William H. Pauley III of the Southern District of New York sentenced him to 18 months of incarceration, followed by a five-year term of supervised release. [Dkt. 1 (Copy of Crim. J)]. Under the mandatory terms of supervised release, Mr. Jepson was prohibited from unlawfully using any controlled substance. [*Ibid.*]. Judge Pauley also imposed special conditions

requiring Mr. Jepsen to participate in an approved outpatient drug treatment program and participate in weekly therapy sessions. [*Ibid*.]. His supervised release commenced on June 1, 2017, and he began residing with his sister in this District shortly thereafter. [Dkt. 6 (Violation Report) at 2].

On March 13, 2019, the Court accepted the requested transfer of jurisdiction over Mr. Jepsen's supervised release from the Southern District of New York. [Dkt. 1]. Despite extensive outpatient and impatient drug treatment, Mr. Jepsen continued to use methamphetamine. [Dkt. 6 (Violation Report)]. He tested positive for illicit drugs on six occasions in 2019. [*Id.* at 2]. During a meeting with the U.S. Probation Officer and his counselor, Mr. Jepsen stated that he believed that treatment was a "waste of time" and that methamphetamine is a "medication" for him. [*Id.* at 5]. The Defendant was arrested pursuant to a warrant on August 28, 2019 and stipulated to his detention. [Dkt. 10 (Detention Hearing)]. The Court granted the Defendant's requested thirty-day continuance of the violation hearing in order to stabilize his health and medication regimen while detained. [Dkt. 17 (Order Granting Def. Mot. for Cont.)].

During the November 2019 violation hearing, Mr. Jepsen admitted to violating the terms of supervised release. [11/28/2019 hearing at 10:08:49-10:09:15]. Mr. Jepsen continued to normalize his drug use during the Court's colloquy, expressing that he used less than others and that he was self-medicating. Mr. Jepsen interrupted the Court as it prepared to impose the sentence. [*Id.* at 10:23:20-10:26:30]. The Court then heard from defense counsel, who explained that treatment of Mr. Jepsen's serious chronic health conditions was interrupted by

medication delays and substitutions while incarcerated. [*Id.* at 10:26:26-10:28:37].
The Court provided Mr. Jepsen the opportunity to present medical records and
directed the parties to jointly request another hearing. [*Id.* at 10:31:08-10:31:40].

At the next proceeding, Mr. Jepsen presented additional information about
his medical conditions. [02/11/2020 hearing at 11:44:19-11:53:10]. The Court
imposed a guideline sentence of nine months incarceration with no supervised
release to follow. [*Id.* at 12:14:45-12:15:31]. The Court noted that the sentence
engendered respect for the law and was in Mr. Jepsen's best interest by giving him
the greatest chance to stabilize himself and to prevent a cycle of violation and
incarceration. [*Id.* at 12:12:06-12:16:43].

On March 26, 2020, Mr. Jepsen moved for compassionate release pursuant
to 18 U.S.C. § 3582(c). [Dkt. 30].  According to the Defendant's motion, Mr. Jepsen
would have served the remainder of his sentence at the Donald W. Wyatt Detention
Facility ("Wyatt"), rather than a Bureau of Prison's facility. [*Id.* at 2]. Mr. Jepsen
requested compassionate release because of his risk of serious complications and
death should he contract COVID-19 based on his specific health conditions, but the
warden at Wyatt denied the request because Wyatt is not a BoP facility. [*Ibid.*].
Through counsel, Mr. Jepsen requested release from the BoP directly, but the
BoP's senior counsel at the Designation and Sentence Computation Center denied
the request because Mr. Jepsen is not incarcerated at a BoP facility. [Dkt. 32 (Def.
Suppl. Mem.) at 1]. By the Court's calculation, the Defendant would be released
from custody on May 28, 2020.

### Legal Standard

The First Step Act of 2018 amended the procedural requirements for a motion to reduce sentence to provide compassionate release. 18 U.S.C. § 3582(c)(1)(A). Because of this amendment, a defendant may move for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Previously, only the BOP could move for compassionate release and such motions were rarely filed. *See United States v. Rivernider*, No. 3:10-CR-222(RNC), 2020 WL 597393, at *2 (D. Conn. Feb. 7, 2020). The amendment expanded access to the courts but did not alter the substantive standard. *See Ibid.*; *see also United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

To consider a sentence reduction for compassionate release, Defendant must show that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). By statute, such reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). Then, before compassionate release can be granted, the Court must consider the 18 U.S.C. § 3553 sentencing factors to the extent relevant. *Ibid.*

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t). As other courts have recognized, the U.S.

4

Case 5:16-cr-00017-TBR-LLK   Document 170-2   Filed 04/09/20   Page 18 of 26 PageID #:
Case 3:19-cr-00073-VLB   Document 41   Filed 04/01/20   Page 5 of 13
1293

Sentencing Commission guidance has not yet been updated to reflect the liberalization of the procedural requirements. *Ebbers*, 2020 WL 91399, at *4. The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

 (A) Medical Condition of the Defendant.--
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.> [or]
> (ii) The defendant is--
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13, Commentary Application Note 1(A)

Commentary Application Note 1(D) contains a residual clause to provide relief for other "extraordinary and compelling reasons" as determined by the Director of the Bureau of Prisons.

The defendant bears the burden of showing that he is entitled to a sentence reduction. *Ebbers*, 2020 WL 91399, at *4.

<u>Analysis</u>

First, the Court finds that Mr. Jepsen's motion is properly before the Court pursuant to 18 U.S.C. § 3582(c)(1)(A) because he exhausted available appeals of the administrative denial of his request for compassionate release. Mr. Jepsen is

essentially caught in a "Catch-22"; neither the warden at Wyatt nor the BoP will consider his request because of his designation to Wyatt, a non-BoP facility. Accordingly, the Court considers the merits of his motion.

On March 13, 2020, the President of the United States declared a national state of emergency to slow the infectivity rate and treat those affected by a novel coronavirus known as SARS-CoV 2 ("COVID-19"). *Presidential Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, Mar. 13, 2020. COVID-19 is an emerging, rapidly evolving public health crisis. In response to public health officials' warnings about the infectivity of the virus and the risk of severe complications, dramatic and widespread "social distancing" measures have been imposed by all levels of government and branches nationwide. *See, e.g.*, D. Conn. Gen. Order In Re: Court Operations Under Exigent Circumstances Created by COVID-19 (Mar. 24, 2020)(continuing all in-person proceedings through May 15, 2020, with limited exception); *see also* Conn. Executive Order 7(h)(Mar. 20, 2020) (general "work-from-home" order for all non-essential businesses).

At last review, COVID-19 has killed 69 Connecticut residents. Eliza Fawcett and Alex Putterman, *Daily coronavirus updates: 'Horrible' month ahead as Connecticut's COVID-19 death toll reaches 69, hospitalizations rise to 608*, HARTFORD COURANT, Mar. 31, 2020. In Rhode Island, where Wyatt is located, there have been eight deaths. Tom Mooney, *An analysis predicts 259 deaths in R.I. from coronavirus. State officials are expecting more.*, PROVIDENCE JOURNAL, Mar. 31, 2020. The BoP has reported the first COVID-19 related inmate death in custody; a 49-year

old inmate at a low security prison in Louisiana with long term medical conditions identified as risk factors. Press Release, Bureau of Prisons, Inmate Death at FCI Oakdale I (Mar. 28, 2020), available at https://www.bop.gov/resources/news/pdfs/20200328_press_release_oak_death.pdf

The U.S. Centers for Disease Control and Prevention has advised that some populations are at an especially heightened risk of severe complications and death if they contract COVID-19, particularly, the elderly and those with certain chronic medical conditions. *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019-COVID, People who are at higher risk for severe illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html* (last reviewed March 31, 2020).

A review of Mr. Jepsen's medical records from Wyatt confirms that he suffers from three of the chronic conditions considered by the CDC to be risk factors for severe complications. [Dkt. 35 (Sealed Med. Records) Ex. B]. The medical records and laboratory testing reflect significant weight gain, some difficulty controlling and managing his chronic conditions, and that he is immunocompromised. [*Id.* at 28, 31].

Strictly speaking, none of Mr. Jepsen's conditions fall within the existing guidance from the U.S. Sentencing Commission because he is not terminally ill, nor has he lost the ability to provide self-care in a correctional setting. U.S.S.G. § 1B1.13. Mr. Jepsen argues that: (1) as a general matter, the Guidelines are advisory

7

only, *United States v. Booker*, 543 U.S. 220 (2005); and (2) it is inconsistent with the text and the undisputed purpose of the First Step Act. [Dkt. 31 (Def. Suppl. Mem) at 14]. The Court agrees and concludes that the Court may determine that "extraordinary and compelling" reasons may exist beyond those delineated by the commentary to U.S.S.G. § 1B1.13. *See United States v. Cantu,* No. 1:05-CR-458-1, 2019 WL 2498923, at *3-5 (S.D. Tex. June 17, 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019).

In *United States v. Fellela*, No. 3:19-CR-79 (JAM), 2020 WL 1457877, at *1 (D. Conn. Mar. 20, 2020), Judge Meyer noted that, "according to an inquiry through the U.S. Marshals Service of the Wyatt facility, there are more than 700 prisoners housed at Wyatt of which more than 500 prisoners are housed in two-person cells and more than 150 prisoners are housed in more-than-two-person cells. There are between 20 to 70 persons at one time in general dayroom areas, and up to 15 persons are allowed in the recreation area at one time." Judge Meyer then concluded that the conditions of confinement at Wyatt were not compatible with the prescribed preventative measures for COVID-19. *Ibid.* Mr. Fellela was in the highest risk group of death given his age (62), his weight (300 pounds), diabetes, and other ailments. *Ibid.* Based on these conclusions and the availability of other safeguards, Judge Meyer ordered the release of the pre-trial detainee. *Id.* at 2.

By contrast, in *United States v. Gileno*, No. 3:19-cr-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020), Judge Bolden denied a defendant's post-conviction motion for compassionate release based in part on risk of complications if the defendant contracted COVID-19. The Government opposed

defendant's motion. *Id.* at 3. The defendant had not satisfied the administrative review requirement. *Ibid.* On the merits, the court concluded that the defendant had not shown that "the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno." *Ibid.*

Although Mr. Jepsen is before the Court as a sentenced offender and not a pre-trial detainee, his current predicament is more akin to *Fellela* than *Gileno.* First, like Mr. Fellela, he is detained at Wyatt. Like Mr. Fellela, Mr. Jepson has multiple risk factors for severe complications from COVID-19, rather than the more generalized concerns raised by Mr. Gileno. In contrast to *Gileno*, Mr. Jepsen satisfied the procedural requirements to bringing a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). Unlike *Gileno*, the Government consents to Mr. Jepsen's release.

Unfortunately, the existence of chronic health conditions is widespread among the inmate population in the U.S. prison and jail system. A Bureau of Justice Statistics report recently found that 40% of jail and prison inmates have a current chronic medical condition. Laura M. Maruschak, Marcus Berzofsky, & Jennifer Unangst, U.S. Dep't of Just., Bureau of Just. Statistics., *Medical problems of state and federal prisoners and jail inmates: 2011-2012* at 1-22, 2 (Feb. 2015) available at <u>https://www.bjs.gov/index.cfm?ty=pbdetail&iid=5219</u>. An inmate's current diagnosis of a chronic condition does not constitute an "extraordinary and compelling" basis for compassionate release, both under the U.S. Sentencing Commission guidance and when these terms are read in the plain sense.

But Mr. Jepsen is in the unique position of having less than eight weeks left to serve on his sentence, he is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19, and the Government consents to his release. The Court finds that the totality of the circumstances specific to Mr. Jepsen constitute "extraordinary and compelling" reasons to grant compassionate release. *See also United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) (granting a consent motion to substitute the remaining four months of incarceration for home confinement for immunocompromised inmate at risk of severe complications from COVID-19)

In reaching this conclusion, the Court also reviewed the PSR from the underlying conviction. [Dkt. 34 (PSR in *United States v. Jepsen*, NO. 1:15-cr-741-02 (WHP))]. The PSR reflects that prior to his federal drug arrest, Mr. Jepsen's only contact with the criminal justice system consisted of driving under the influence convictions, none of which resulted in a criminal history point under the guidelines. The Court is satisfied that releasing Mr. Jepsen from custody eight weeks before his scheduled release date does not create any appreciable danger to the community.

**18 U.S.C. § 3553(a) factors**

Having determined that Mr. Jepsen has carried his burden to establish "extraordinary and compelling" reasons to support compassionate release, the

10

Court now considers whether a sentence of time served satisfies that 18 U.S.C. § 3553(a) sentencing factors.

First, a sentence of time served would still fall within the advisory guideline range for a Grade C violation and a Criminal History category of I. §7B1.4 (3-9 months' incarceration).

Second, the Court finds that a sentence of time served would still reflect the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. § 3553(a)(2)(A). Despite his earlier protest to the contrary, Mr. Jepsen is a drug addict. His history of oppositional behavior caused him to squander repeated attempts to provide him necessary and court ordered drug and psychological treatment. His disrespect for the Court during the November 2019 hearing suggested continued disrespect for the law. However, the Court finds that, considering the changed circumstances, a period of incarceration of time served reflects the severity of Mr. Jepsen's conduct and is a just punishment. Mr. Jepsen has had enough time in incarceration to consider his actions and his resultant life circumstances.

Third, the additional period of incarceration was also intended to provide Mr. Jepsen with needed medical stabilization and an opportunity to establish a post-release support plan and network. Here too, the circumstances have changed, and incarceration is no longer the most effective way to deliver this necessary support. § 3553(a)(2)(D). Mr. Jepsen stated that he will reside with a friend in the Waterbury, Connecticut area. [Dkt. 31 (Def. Mem. in Supp) at 17]. The Court notes that Mr.

Jepsen's friend attended both court hearings. Defense counsel avers that his friend contacts him regularly regarding Mr. Jepsen's well-being. *Id*. Given the consistency of support, the Court finds that Mr. Jepsen will have a support system to provide him adequate assistance upon his release from custody.

Accordingly, the Court finds that a sentence of time served is sufficient, but not greater than necessary, to achieve the statutory aims of sentencing. § 3553.

<u>Conclusion</u>

Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c) is GRANTED. For the protection of the public, the U.S. Marshals Service is directed to instruct the warden at Wyatt that Mr. Jepsen is to be screened for potential COVID-19 infection prior to his release by whatever means are currently in place to screen staff and other essential visitors entering Wyatt, if any. If Mr. Jepsen has a body temperature or other indicator deemed by Wyatt to reflect a possible COVID-19 infection, that condition must be promptly reported to the Court by defense counsel. Mr. Jepsen is responsible for securing his own transportation upon release.

Lastly, the Court encourages Mr. Jepsen to continue his drug and psychological treatment when released from custody. It is the Court's earnest hope that Mr. Jepsen will return to be a productive member of society. In the Court's observation, he benefited from the support and goodwill of personal and professional networks alike. The Court is confident that Mr. Jepsen has the necessary tools to succeed, should he choose to do so.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: April 1, 2020

13